IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ERVIN M. GRAVES,

Petitioner,

v.                                    CASE NO. 04-3097-RDR

COMMANDANT, U.S.D.B.,
et al.,

Respondents.

## MEMORANDUM AND ORDER

This is a petition for writ of habeas corpus, 28 U.S.C. 2241, filed by an inmate of the United States Disciplinary Barracks, Fort Leavenworth, Kansas (USDB).  Petitioner Graves, a former member of the United States Army, challenges his convictions by general court-martial of attempted rape and premeditated murder of another service member.  He was convicted in 1994, and sentenced to life imprisonment.  The facts of the crimes are set forth in U.S. Graves, 47 M.J. 632, 634 (A.C.C.A. 1997).

## PROCEDURAL HISTORY

Military courts-martial are generally reviewed de novo by panels of appellate military judges pursuant to 10 U.S.C. 866. In Graves' Article 66 appeal to the Army Court of Criminal

1

Appeals (ACCA), his counsel asserted 8 assignments of error[1].
Graves also filed a motion for new trial while his appeal was
pending, in which he claimed to have new evidence of fraud on
the court-martial that an expert witness had falsely testified
as to his academic credentials.  The ACCA heard oral arguments;
required briefs on specified issues; and on September 16, 1997,
issued an opinion dismissing two "multiplicious" specifications
and affirming other findings of guilty and the life sentence.
See Graves, 47 M.J. at 634; A&R (Doc. 11), Attachment 12.  The
ACCA also denied Graves' motion for new trial[2]. In October, 1997,
"through civilian counsel" Graves filed a "Motion for
Reconsideration of Denial of New Trial and Request for Sentence
Relief", which was granted, and the earlier opinion was vacated.
Graves' claims were "again, carefully considered," and the ACCA
again dismissed two multiplicious specifications, affirmed the

---

[1]

Counsel's assertions were (1) failure to dismiss multiplicious charges, (2) one offense not proper under UCMJ, (3) insufficiency of evidence, (4) no meaningful distinction between premeditated and unpremeditated murder, (5) instructions deleted required element, (6) unfair trial due to inattentive or sleeping panel members, (7) erroneous admission of gun residue evidence, and (8) erroneous admission of hair analysis evidence.

[2]

Under military law, "a new trial based on newly discovered evidence will not be granted unless the new evidence: (1) was discovered after trial; (2) would not have been discovered at the time of trial in the exercise of diligence; and (3) if considered at trial, would probably have produced a substantially more favorable result for the appellant." Graves, 47 M.J. at 639, citing Rules for Courts-Martial (RCM), 1210(f)(2)(A)-(C).

other findings of guilty and the sentence, and denied Graves'
motion for new trial.  <u>Graves</u>, 47 M.J. at 640.  Respondents
point out that during the appellate process, Graves personally
submitted seven pleadings pursuant to <u>United States v.
Grostefon</u>[3], 12 M.J. 431 (C.M.A. 1982) plus his motion for new
trial, some 160 pages of pleadings raising numerous issues[4].

Graves filed a petition for grant of review with the U.S.
Court of Appeals for the Armed Forces (CAAF).  In December,
1998, a 43-page Supplement[5] to that petition was filed by

---

[3]

Under <u>Grostefon</u>, an accused has a right to personally submit all issues, even if not supported by facts or law, to the military appellate courts; appellate defense counsel must at a minimum invite the attention of the military court to those issues; and the court must acknowledge that it has considered them.

[4]

The errors asserted "personally" by Graves in appendices to counsel's appellate brief and a "supplement" were: (1) denial of access to the courts, (2) ineffective assistance of trial counsel, (3) unlawful command influence, (4) defective CID investigation, (5) counsel conflict of interest, (6) investigative agent/witness allowed to remain at counsel table throughout trial, (7) attempted interrogation violated Miranda rights, (8) words in his statement were changed, (9) improper handling of evidence, (10) gunshot residue evidence tainted, (11) expert testimony not from personal knowledge, (12) contradictory expert testimony, (13) defective Article 32 investigation in that charges added without sufficient notice, (14) defective Article 34 Advice, (15) court-martial lacked jurisdiction due to improper referral, (16) trial counsel "tampered" with a defense witness, (17) due process and speedy trial violations, (18) prosecutorial misconduct in presenting perjured testimony, (19) fraud on the court, (20) failure to conduct requested DNA test and destruction of evidence, (21) suggestive photo line-up, (22) illegal search, (23) an "802 conference" was held without Graves present, (24) multiplicious charges, (25) insufficient evidence, (26) erroneous jury instructions, (27) and judge was biased and "became witness."

[5]

The issues raised were some of those presented to the ACCA, plus a claim that Graves was entitled to sentence credit because he had received an unfavorable clemency recommendation at the USDB allegedly in retaliation "because he assists other inmates with their Grostefon submissions, Writs for Habeas Corpus and civil rights complaints."

appointed counsel.  At the same time, Graves filed a pleading raising some of the Grostefon issues he had presented to the ACCA.  On July 14, 1999, the CAAF granted Graves' petition for review, and affirmed the ACCA's decision.  A&R (Doc. 11), Attach. 18.  Graves  filed for a writ of certiorari to the U.S. Supreme Court, which was denied on April 24, 2000.  Graves v. United States, 529 U.S. 1093 (2000).

On October 4, 1999, Graves had filed a "Petition for Extraordinary Relief in the form of Error Coram Nobis and Habeas Corpus" alleging the military judge was not qualified.  The ACCA denied the Petition, Graves appealed to the CAAF, and his appeal was denied on August 22, 2000.  Graves filed another "Petition for Extraordinary Relief . . ." in the ACCA on June 5, 2000, which was denied June 8, 2000.

Graves filed his first 2254 petition for writ of habeas corpus in this court in 2001, Graves v. Andraschko, Case No. 01-3152 (D. Kan.).  The claim that he was not competent to stand trial was not  presented in his original Petition, but raised in a supplement filed after a show cause order had issued.  It was dismissed without prejudice as unexhausted.  The Petition was dismissed on September 11, 2003.  The denial was affirmed by the Tenth Circuit Court of Appeals on March 3, 2004.  Graves v. Andraschko, No. 03-3290 (10th Cir., unpublished).

4

On August 12, 2003, Graves had filed another petition for extraordinary relief[6] in the ACCA, alleging he was

> incompetent at the time of the offense due to a
> Chronic, Severe, Brain Disabling Disease (Paranoid
> Schizophrenia), that he was unaware of what this
> disease was at the time; . . . was incompetent at the
> time of the court martial and unable to competently
> assist his trial defense counsel in his own defense or
> to fully understand (the) proceedings against him; and
> . . . was incompetent at the time of his appellate
> process . . . ."

A&R (Doc. 11) Attach. 24 at 5.  Graves requested that the ACCA order the convening of a sanity board to determine his mental capacity at these times, and overturn his convictions if the board determined he was incompetent.  The ACCA denied relief on August 18, 2003, stating:

> On consideration of the Petition for Extraordinary
> Relief in the Nature of a Writ of Mandamus, which
> Petitioner initially styled as a Writ of Habeas
> Corpus, Writ of Error Coram Nobis, and Writ of
> Mandamus, filed on 12 August 2003, the Petition is
> DENIED.

Id, Attach. 25.  On September 25, 2003, Graves filed a motion for reconsideration and to supplement original petition[7],

---

6

The pleading was captioned: "Petition for Writ of Habeas Corpus Writ of Error Coram Nobis and Writ of Mandamus."  This appears to be the first time Graves presented any claim based upon mental incompetence to the military courts.

7

This pleading was entitled "Motion for Rule 19 Reconsideration Petition for Extraordinary Relief Nature of a Writ of Error Coram Nobis and Writ of Mandamus to enable Petitioner to exhaust his military remedies through the Military Courts and Motion to Supplement Original Petition for Extraordinary Writ Nature of Error Coram Nobis and Mandamus, and a Motion to Order defense counsel to represent

alleging he had been unable to cooperate with a pre-trial sanity board because of his mental disease, ineffective assistance of counsel as a result of his mental disease, and other claims.  He also complained about having to proceed in post-conviction matters without appointed counsel.  Graves alleged that various challenges to his convictions should be considered because he "was in no condition to raise any such issues during . . . the proceedings."  Id., Attach. 28 at 5.  Graves also contended that under the "All Writs Act," the Army Court should order a sanity board to determine his mental capacity to have understood that his behavior was wrong due to delusions, hallucinations and having consumed an entire case of beer; cooperated with the court-ordered, pre-trial sanity board due to his mental condition and voices telling him what to say; cooperated with defense counsel and understood the trial proceedings; and assisted with his appeals.  Graves also asserted that appellate defense counsel Harris was ineffective for failing to request a post-trial sanity board, and that the military judge and the ACCA should have sua sponte ordered a sanity board because a bona-fide issue of sanity was raised by "bizarre statements" he made in his Grostefon submissions.  The ACCA opinion provided:

---

Petitioner or issue a Mandamus."  Petitioner asked the ACCA to order a post-trial sanity board to determine his mental capacity at the time of the offenses, trial and direct appellate review.

On consideration of the Petitioner's Pro Se Motion for
Leave to File a Motion for Reconsideration of our 18
August 2003 denial of his Petition for Extraordinary
Relief, filed on 12 August 2003, said Motion for
Reconsideration being filed on 25 September 2003,
which we elect to treat initially as a Motion for
Leave to File Out of Time, and considering the
circumstances of Petitioner's Pro Se representation
and the potentially complex nature of the substantive
issues presented, we GRANT the Motion for Leave to
File a Motion for Reconsideration Out of Time.

On consideration of the Motion for Reconsideration,
filed out of time on 25 September 2003, we GRANT the
Motion for Reconsideration and will reconsider our 18
August 2003 order and, we will consider the
supplemental pleadings filed Pro Se by Petitioner on 25
September 2003 relevant to his Petition for
Extraordinary Relief.

On reconsideration of the Petition for Extraordinary
Relief, initially filed on 12 August 2003, and
considering the Petitioner's supplemental pleadings
filed on 25 September 2003, in the Nature of a Writ of
Mandamus, which Petitioner initially styled as a Writ
of Habeas Corpus, Writ of Error Coram Nobis, and Writ
of Mandamus, and a Motion to order the appointment of
military appellate counsel to represent Petitioner, .
. . the Petition is DENIED.

The order was dated October 1, 2003.  Graves then filed a "Writ-
Appeal Petition for Review" (signed October 17, 2003) in the
CAAF, which was denied[8].

On March 24, 2004, Graves filed the instant 2254 Petition.

---

[8]

The CAAF's order provided: "On consideration of the writ-appeal petition, it is, by the Court, this 12th day of November, 2003, ORDERED: That said petition is hereby denied."

**CLAIMS**

Graves presents 5 claims before this court that are not related to his mental disease: (1) the court-martial judge failed to properly instruct on lack of specific intent to commit premeditated murder given evidence of his intoxication; (2) trial defense counsel was ineffective for failing to insist on a voluntary intoxication instruction when Graves had drunk "massive amounts of alcohol" the night of the murder; (3) the ACCA failed to order a "DuBay" hearing on his claim that the trial record was tainted; (4) the military court erroneously affirmed his life sentence, after dismissing 2 multiplicious charges, rather than remanding for re-sentencing, and (5) he was denied his Sixth Amendment right to counsel to assist him in pursuing and supplementing his extraordinary petitions and appeals of their denials in military court.

Graves' other claims in his Petition are based upon allegations of incompetency: (1) he was incompetent at the time the offenses were committed as a result of mental disease; (2) the pre-trial sanity board findings were unreliable due to his lack of cooperation, (3) he was incompetent during trial and direct appeal; (4) appellate defense counsel was ineffective for not moving for a post-trial sanity board; (5) the ACCA should have sua sponte ordered a post-trial sanity board to determine

his competency; (6) he was unable to raise his claims during trial and appeal due to his severe mental disease, (7) appointed trial and appellate defense counsel were prevented from effectively representing him because his severe disease controlled all his actions and decision-making so that he could not assist "in any rational way" with his defense.

**LEGAL STANDARDS**

Generally, federal civilian courts are extremely limited in their scope of review of military court-martial proceedings.  The touchstone of cases discussing the scope of review is <u>Burns v. Wilson</u>, 346 U.S. 137 (1953).  In <u>Burns</u> the United States Supreme Court held that when a military tribunal "has dealt fully and fairly with" allegations raised in a petition for writ of habeas corpus, "it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." <u>Id</u>. at 142.  The court further stated: "It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims."  <u>Id</u>. at 144; <u>see also Lips v. Commandant, U.S. Disciplinary Barracks</u>, 997 F.2d 808, 811 (10th Cir. 1993), <u>cert</u>. <u>denied</u>, 510 U.S. 1091 (1994).  If an issue is brought before a military review court and is disposed of, even summarily, the federal habeas court will find that the military

tribunal has given the claim full and fair consideration.  <u>Watson</u>
<u>v. Carter</u>, 782 F.2d 143, 145 (10th Cir.), <u>cert</u>. <u>denied</u>, 476 U.S.
1184 (1986).

There is no doubt that trial of an incompetent defendant
violates due process.  <u>Drope v. Missouri</u>, 420 U.S. 162, 171-72
(1975); <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996); <u>United</u>
<u>States v. Williams</u>, 113 F.3d 1155, 1160-61 (10th Cir. 1997); <u>see</u>
<u>Sena v. New Mexico State Prison</u>, 109 F.3d 652, 654 (10th Cir.
1997).   "The right to not stand trial while incompetent is
sufficiently important to merit protection even if the defendant
has failed to make a timely request for a competency
determination."  <u>Cooper</u>, 517 U.S. at 354, FN4, *citing* <u>Pate v.</u>
<u>Robinson</u>, 383 U.S. 375, 384 (1966).  Under the recognized test,
"a defendant is competent to stand trial if he 'has sufficient
present ability to consult with his lawyer with a reasonable
degree of rational understanding [and if] he has a rational as
well as a factual understanding of the proceedings against him."
<u>See</u> <u>Dusky v. United States</u>, 362 U.S. 402 (1960); <u>Walker v.</u>
<u>Attorney Gen. for the State of Okla.</u>, 167 F.3d 1339, 1343 (10th
Cir. 1999).  Competency of the defendant may be presumed and the
burden placed upon defendant to prove his incompetency by a
preponderance of the evidence.  <u>Medina v. California</u>, 505 U.S.
437, 449 (1992).

Under the military law in effect when the offenses were committed, lack of mental responsibility is an affirmative defense[9] as to which the accused has the burden of persuasion by clear and convincing evidence. Article 50a, UCMJ, 10 U.S.C. 850a; R.C.M. 916(k); <u>see</u> <u>United States v. Dubose</u>, 47 M.J. 386 (C.A.A.F. 1998). The issue of the accused's mental capacity is a question of fact. R.C.M. 909(c)(1); <u>see also</u> <u>Bryson v. Ward</u>, 187 F.3d 1193, 1201 (10th Cir. 1999), <u>cert</u>. <u>denied</u>, 529 U.S. 1058 (2000). The court-martial was to proceed unless it was established that the accused lacked the capacity to stand trial. R.C.M. 909(c)(2); <u>U.S. v. Kopp</u>, 34 M.J. 934, 936 (AFCMR 1992).

Military courts have authority to consider a defendant's competency on appeal, notwithstanding the determinations of the court-martial, R.C.M. 1203(c)(5); <u>United States v. Massey</u>, 27 M.J. 371, 374 (C.M.A. 1989), and even if the issue were not raised prior to or during the trial. <u>Massey</u>, 27 M.J. at 371; <u>United States v. Correa</u>, 21 M.J. 719 (A.C.M.R. 1985). Where inquiry after trial produces new information which raises an issue of mental responsibility, appropriate action including a

---

[9]

Article 50a, UCMJ, provides:

> [I]t is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts.

<u>Id</u>., 10 U.S.C. 850a(a).

rehearing may be taken.  <u>See</u> <u>Massey</u> 27 M.J. at 374-375; <u>United States v. Young</u>, 43 M.J. 196, 197 (C.A.A.F. 1995).  However, one military appellate court observed they have never held that a post-trial psychiatric report per se requires a new trial or a hearing under <u>United States v. DuBay</u>, 37 CMR 411 (C.M.A. 1967). <u>U.S. v. Gray</u>, 51 M.J. 1, 16 (C.A.A.F. 1999), <u>cert</u>. <u>denied</u>, 532 U.S. 1035 (2001).  A diagnosis of paranoid schizophrenia does not by itself equate to lack of mental responsibility for one's crimes.  <u>Id</u>. at 14.

Under civilian law, a substantive competency claim is likewise not subject to procedural bar.  <u>See</u> <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1346 (10th Cir. 1997), <u>cert</u>. <u>denied</u>, 525 U.S. 852 (1998).  However, a petitioner is entitled to an evidentiary hearing to prospectively consider his competency at the time of trial only upon raising a threshold doubt about his competency by clear and convincing evidence.  <u>See</u> <u>id</u>.; <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1133 (10th Cir. 1999); <u>Carter v. Johnson</u>, 131 F.3d 452, 460 (5th Cir. 1997), <u>cert</u>. <u>denied</u>, 523 U.S. 1099 (1998), *quoting* <u>Lokos v. Capps</u>, 625 F.2d 1258, 1261 (5th Cir. 1980).  "In order ... to raise such doubt, [the petitioner] must present facts sufficient 'to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' concerning his mental capacity."  <u>Nguyen, 131 F.3d at 1346</u>; *quoting* <u>United States v.</u>

<u>Williams</u>, 819 F.2d 605, 609 (5th Cir. 1987), <u>cert</u>. <u>denied</u>, 484
U.S. 1017 (1988).   A court conducting a competency inquiry,
although not limited to these factors, should consider
defendant's demeanor at trial, any evidence of irrational
behavior by defendant, and perhaps most important, any prior
medical opinions regarding competency.   <u>Drope</u>, 420 U.S. at 180;
<u>Walker</u>, 167 F.3d at 1346; <u>see</u> <u>Coleman v. Saffle</u>, 912 F.2d 1217,
1224 (10th Cir. 1990).


**PRELIMINARY CONSIDERATIONS**

        Respondents do not assert that this second 2254 Petition
challenging Graves' 1994 military conviction is successive or
abusive.   However, they do make what amounts to a procedural
default argument.   Generally, federal habeas review of
procedurally barred issues is foreclosed

>       unless the prisoner can demonstrate cause for the
>       default and actual prejudice as a result of the alleged
>       violation of federal law, or demonstrate that failure
>       to consider the claims will result in a fundamental
>       miscarriage of justice.

<u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).   Respondents
appear to contend that this court should not consider the merits
of petitioner's claims because the military courts lacked
jurisdiction to consider them.   One basis for their argument is
that the two-year period for filing a motion for new trial in the

military courts expired.  They assert that under 10 U.S.C. 873,
Graves had two years after approval by the convening authority of
his court-martial sentence to raise newly discovered evidence in
a petition for a new trial, that Graves failed to raise the new
evidence of incompetency by petition for new trial in that time
period, and was therefore precluded from raising this claim.
Their other basis is that once the military courts have completed
appellate review, the conviction is "final" and "cannot be
overturned" under 10 U.S.C. 876.   They also argue that the
military courts have no jurisdiction[10] to decide extraordinary
writs under the "All Writs Act," *citing* Clinton v. Goldsmith[11],
526 U.S. 529, 536 (1999).  Respondents thus argue that there was
final judgment in Graves' case "when the writ of certiorari was
denied," and that military appellate jurisdiction terminated
under 10 U.S.C. 871(c)(1)(B).  Respondents further argue that the

---

[10]

This is obviously not the same as arguing that this Petition is successive or abusive.  Since the latter argument has not been raised, it will not be decided by this court, and no cause and prejudice analysis will be undertaken.  See McCleskey v. Zant, 499 U.S. 467, 497 (1991)(adopted cause and prejudice standard in the abuse-of-writ context).

[11]

Respondents' reading of Clinton as holding that the military appellate courts have no jurisdiction to review Graves' challenges to his convictions under the All Writs Act is incorrect.  The Supreme Court held in Clinton that the action of dropping a service member from the rolls of the Armed Forces was an executive action, not a finding or sentence imposed in a court-martial proceeding, and was therefore beyond the CAAF's jurisdiction to review and "hence beyond the 'aid' of the All Writs Act in reviewing it."

military courts "could not act" upon Graves' several extraordinary writs "because of the finality of his conviction."

The court does not deny relief in this action based upon respondents' procedural default argument. In the first place, the written opinions of the military courts do not indicate in any way that petitioner's post-conviction claims were denied based upon a clearly recognized and consistently adhered-to military procedural rule. To the contrary, the ACCA and the CAAF expressly considered petitioner's post-conviction claims. Secondly, the military appellate courts do have the authority to collaterally review challenges to convictions under the All Writs Act, 28 U.S.C. Sec. 1651(a), and have done so in this case and numerous others. Thompson v. United States, 60 M.J. 880, 883 (C.A.A.F. 2005); Dettinger v. United States, 7 M.J. 216, 219 (C.M.A. 1979).

**DISCUSSION**

Graves claimed in his 2254 Petition filed in 2001 that (1) the trial judge's instructions on premeditated and unpremeditated murder violated due process, (2) the ACCA improperly affirmed his sentence after it dismissed two charges as multiplicious, and (3) the trial record was tainted in that testimony by an expert witness as to his academic qualifications was erroneous and

15

improperly corrected.   Petitioner again argues these claims in this second 2241 Petition.   These three claims were determined against Graves by this court in the prior action, and will not be considered further herein.

Graves' claim that he was denied his right to representation on motions for reconsideration and appeals following denials of his extraordinary writs was considered and denied by the military courts, and has no legal merit.   There is no federal constitutional right to counsel in habeas corpus proceedings.

This court agrees with respondents that Graves' claims involving failure to instruct on voluntary intoxication were waived because objection was not made at trial and they was not asserted on direct appeal.   It appears from the record that defense counsel agreed with the military judge that there had not been sufficient evidence of intoxication to warrant an instruction.   Moreover, the defense strategy presented at trial was that Graves was not the perpetrator, rather than that he committed the murder but lacked capacity to form the requisite intent as a result of intoxication.

The claim that Graves was incompetent to stand trial was dismissed, without prejudice, from his prior 2254 petition[12]

---

[12]

In his 2001 federal habeas, Graves attempted to add the claim that he was incompetent.  The court denied his motion to amend because the claim had not been exhausted in the military courts.  The court also

because he had not exhausted military remedies thereon.   The court finds that petitioner's incompetency claims relate back, under Fed.R.Civ.P. 15(c)(2), to the filing of his first 2254 Petition.   Thus, the court does not treat this Petition as a second, successive habeas action which should have been transferred to the Tenth Circuit for consideration under 28 U.S.C. 2244(b)(3).

Since the general procedural bar rule does not apply to substantive mental competency claims, <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106-07 (11th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1247 (1996); <u>see</u> <u>Sena</u>, 109 F.3d at 654, this court does not undertake an analysis of cause and prejudice.   <u>See</u> <u>Nguyen</u>, 131 F.3d at 1346.   Instead, the remaining claims based upon petitioner's alleged incompetency, have been considered herein.

The court concludes from the records of the military courts, the exhibits submitted by Graves, and all the filings in this case as well as petitioner's prior 2254 action, that Graves' claims based upon his allegations of incompetency have been fully and fairly considered by the military courts.   The records show that Graves presented these claims to the ACCA and CAAF, and that both courts expressly considered them.   Furthermore, for reasons

---

denied petitioner's motion to stay proceedings in the prior action until petitioner had exhausted, and denied relief on the issues which were exhausted.

which follow, this court finds that the record supports the decisions of the military courts denying relief, and no showing is made that the military courts applied incorrect legal principles. Consequently, Graves is not entitled to relief under 28 U.S.C. 2254 based upon those claims.

In support of his claims that his military convictions should be overturned due to lack of mental responsibility, petitioner proffers "bizarre" statements he made in presenting a Grostefon issue during military appeals, a 1998 diagnosis made at the USDB, some exhibits, and many personal allegations. This court has carefully reviewed each of these pieces of evidence.

**Bizarre Statements in Grostefon Submissions**

Graves alleges that the military appellate courts should have doubted his sanity due to "bizarre" statements he made while presenting a Grostefon issue on appeal. In his Grostefon submissions[13], Graves complained that "Psychological Warfare

---

[13]    Graves alleged in his submissions: "Appellant contends that certain unknown person(s) have been conducting psychological testing/warfare, and under the Eighth Amendment of the Constitution, it is cruel and unusual punishment;" that in "November of 1994 and to this present day, I have been continuously harassed (psychologically) by having my phone conversations played back to me" while in my cell; and "letters that I have written have been read back to me" by a person who is "not visible and can only be heard;" and that some "would say I was suffering from paranoia, but its very easy to reach that state when you can't even trust fellow inmates around you, who may steal or try to pry into your case." He asked the military court to investigate.

He claimed other inmates were hearing voices too, and he and others were thinking some unknown person was going to assault them. He said inmates didn't tell anyone because they would have to go to administrative segregation and be labeled as crazy. He also said, "I knew . . . from the start that I wasn't

Testing" was being done on him and other inmates at the USDB. "Motion to File Additional Matters Pursuant to United States v. Grostefon," (November 14, 1996), Traverse, Doc. 12, Attach 1. Graves now alleges that his appellate defense counsel's supervisor advised her to file a motion requesting a post-trial sanity board based upon these statements in his 1996 Grostefon submissions, but she decided against it.   No post-trial determination was made as to Graves' competency during appellate review.

**Pre-trial Sanity Board**

Also in his 1996 Grostefon submissions, petitioner stated:

> During pretrial, Appellant was given a sanity board . . . at Camp Lejeune Hospital on 13 October 1993.  * * * I even had a defense expert, Col. Hosteadler, Head of Psychiatric Department at Ft. Sam Houston, consider me to be sane.  The USDB gave me a battery of psychological tests including the MMPI and nowhere in any of their evaluations was I deemed to be mentally unstable or insane. . . .

<u>Id</u>., Attach. 1 at 1-3.

---

crazy, maybe paranoid by this whole confinement issue, however, that's normal for anyone placed in" this environment.  He stated that as he sat in his cell in July, 1995, "the same voices . . . told me to tell my appellate attorney that I wished to waive my appeal and go to the Department of Mental Health (DMH) and sign up for all the classes and confess and admit guilt. . . . Then they would say don't do that."  He also stated that "the entire time" he was preparing to raise legal issues, he was "continuously harassed by voices distracting (him), attempting to intimidate (him)."  He said that on May 5, 1995, when he talked to his trial defense attorney Allen he feared saying much "because everything (he) said was repeated back to (him)." He stated he was letting the court know "what is going on at the USDB to some of the inmates."  He also complained of a search of his cell which he claimed was harassment, and withholding of his legal books. <u>Id</u>. at 3-7.

Rule for Courts-Martial 706 provides that if it appears an accused lacks mental responsibility for any charged offense or lacks capacity to stand trial, a request for a mental examination into the accused's mental condition shall be made.  The request is referred to a board of one or more persons, at least one of which normally is a psychologist.  The board must then author a report as to the accused's mental capacity, mental responsibility or both.  U.S. v. Best, 59 M.J. 886, 887 FN2 (A.C.C.A. 2004).  According to Graves' own allegations, a pre-trial, formal inquiry under Rule 706 determined he was mentally responsible for his acts and had the mental capacity to stand trial.  Neither party cites to an express finding of competency or a report by the board, and the court finds none in the records provided in this case.  It is apparent, however, that the court-martial judge allowed Graves to proceed to trial.  That fact "constitutes an implied finding that he was sufficiently competent to stand trial."  See Saffle, 912 F.2d at 1226.

Graves discounts the sanity board, contending he was "unable to cooperate" with the doctor "due to internal voices" telling him what to say and not say during the interview.  Graves has stated in support of his claim of incompetency:

> Petitioner was given a sanity board by a military doctor, but when the doctor had a witness come into the room to witness the reading of article 31 rights warning, that anything petitioner said could be used

20

against him in a court-martial. (sic) Petitioner just
denied any involvement in the crime as the voices had
told him to do, so he was never able to fully cooperate
with the board.

He claims that if he "had been diagnosed with his severe mental
defect and prescribed medication" at that time, he "would have
most likely been able to cooperate." He asks the court to find
that the results of the court-ordered sanity board were
unreliable, to set aside his conviction, dismiss all charges, and
order his reinstatement. Petitioner also asks this court to
issue a mandamus requiring that the military courts or prison
officials conduct a post-trial sanity board to determine his
mental capacity at the time of the offenses, trial, and appellate
review; or to order an evidentiary hearing and appoint "expert
assistance."

**USDB Diagnosis**

Several exhibits were attached to Graves' pleadings to the
ACCA, which are also presented to this court. One is a
Memorandum on the "clinical diagnosis" of inmate Graves dated
September 29, 1998, from Ellen H. Galloway, Psy.D. The Memo
states that "diagnostic clinical interviews" were performed on
August 28, and September 21, in 1998; and that the diagnosis was
Schizophrenia, Paranoid Type. The memo finally provides,

This evaluation was performed to obtain the clinical
information necessary to assist in obtaining the proper
treatment for Mr. Graves. Those findings should not be

21

used in place of an official sanity board or competency
evaluation.

**Trial Defense Counsel Affidavit**

Also attached to Graves' Traverse is a Memorandum dated July
10, 1998, from Major Allen, the "lead defense counsel" for Graves
during his July, 1994, court-martial.  In this memo, Major Allen
states that in August, 1996, while he was at the USDB on
unrelated business he visited Graves, and during the visit Graves
"made several references to 'hearing voices'."  Graves also told
Allen at that time that USDB personnel were opening all his mail
and had planted microphones in cell.  Allen stated he did not
inform anyone of Graves' comments, and that Graves had other
appellate counsel (Harris) at the time.

**Varney Affidavit**

Graves also presents the 1998 affidavit of Katherine Varney,
who had served as prison legal counsel to inmates in the fall of
1996 and had advised Graves on some administrative matters at the
USDB.  She avers that Graves had informed her he was "constantly
hearing voices" and that USDB personnel had bugged his cell and
were monitoring him.  He told her the voices were coming through
devices placed by prison personnel and he felt they were intended
to make him crazy.

**USDB Management Plan**

Graves also exhibits a "Special Needs Inmate Management

22

Plan" signed by Psychologist Galloway, dated May 3, 2002, which reported his diagnosis of Paranoid Schizophrenia, his prescribed medication, and resulting administrative recommendations as to housing, program assessment, and discipline.  It stated that his condition is only partially controlled with his medication, but that he is presently stable.  Since 1998, Graves has been housed in a special section of the USDB for mentally ill inmates and is receiving mental health treatment and medication.

**Graves' Allegations**

Graves alleged before the ACCA in 2003 that he began hearing voices in 1990, which he thought were "God and His Angels."  A&R (Doc. 11) Attach. 24, at 8.  Graves further alleges from his understanding of the nature of his mental disease and comments of the psychologist that he believes his disease could have started when he was 12 years old, and that he was incapacitated by his disease at the time of the offenses and throughout the military proceedings.  He alleges that at the time of the offenses he was "well into the most severe stages" of his "chronic, severe, brain disabling disease."  He states that his disease was untreated and undetected in 1993.  He alleges that "God and His Angels" told him to shoot a fellow soldier possessed by a demon before the demon came out and got him, and that he had "unknowingly consumed one case" of beer prior to the offense.  He also alleges that

"voices[14] told him to shoot and kill the demon . . . only to find out after the demon disappeared that he had killed 2nd Lt. Lisa Bryant."  Traverse (Doc. 12) at 8.  He states that he told no one because they would not believe him.  Graves states in his Traverse that he could not tell appellate counsel or the court except what they would believe "because if he told them about the Generators and Laser Beams they would not believe him and would just think he was crazy and disregard him."  Id. at 7-8. Petitioner's condition came to light, according to him, when voices told him to kill another inmate but he refused, and he then told an officer about the USDB recording his calls and playing and reading things back to him in his cell.  A psychologist came to see him as a result, whom he believed was not part of the warfare testing, so told her "exactly what was going on."

Balanced against this evidence to support petitioner's claims, is Graves' own allegations that he was allowed to proceed to trial after being evaluated by a sanity board, and the record of his military court-martial and appeals.  Graves does not challenge the procedures utilized by the sanity board.  The

---

14

Petitioner alleges nothing about "the voices" as affecting his ability to appreciate the nature and quality or the wrongfulness of his acts.  See United States v. Lee, 43 M.J. 518, 522 (A.C.C.A. 1995), aff'd, 46 M.J. 123 (C.A.A.F. 1996).

presumption of regularity that attached to this pre-trial proceeding is not rebutted by petitioner's admission that he intentionally concealed certain information at this hearing.

This court's own review of the military records uncovered no recorded instance of abnormal behavior by Graves at any time during the court-martial proceedings. See Gilbert v. Mullin, 302 F.3d 1166, 1180 (10th Cir. 2002), cert. denied, 538 U.S. 1004 (2003). There is no affidavit presented by any person who attended the trial or observed Graves behavior elsewhere at that time, or by his trial defense or appellate counsel, indicating that Graves behaved in a bizarre fashion during any of the proceedings or consultations, or that Graves had any difficulty assisting with his defense. Graves has not even alleged that he displayed any irrational or unusual behavior during the pretrial proceedings, trial, or appeal other than the statements in his Grostefon submissions. On the other hand, the record contains numerous pleadings filed by Graves shortly after trial, which lucidly articulate many claims and related events. This fact seriously undermines Graves' unsupported allegations that he was in the throes of a mental disease which prevented him from being able to raise any claims, understand the proceedings, or assist in his defense. See Saffle, 912 F.3d at 1226; Nguyen, 131 F.3d at 1346.

25

In arguing that a bona fide doubt existed as to his competency to stand trial, Graves relies primarily on the post-trial, 1998 diagnosis at the USDB. The memos reporting Graves' post-trial diagnosis contain no finding or suggestion that Graves was incompetent at the time of the offenses, trial, or appeals process. An individual can have a mental disease, even paranoid schizophrenia, and still be competent during criminal proceedings. See Clayton v. Gibson, 199 F.3d 1162, 1171-72 (10th Cir. 1999), cert. denied, 531 U.S. 838 (2000).

In arguing that the military appellate courts should have doubted his competency, Graves relies primarily on his statements in his Grostefon submissions. While these statements certainly suggest some paranoid thinking, they are a small part of 160 pages of pleadings which much more markedly evince that Graves had a detailed understanding of the trial and appellate proceedings. Having carefully reviewed the record in this case, this court finds that Graves has presented insufficient evidence to entitle him to a hearing on the issue of his competency to stand trial or assist with his defense and appeals.

Graves has also utterly failed to present clear and convincing evidence that he was suffering from a severe mental disease at the time of the commission of the offenses; or that if he was, it caused him to be unable to appreciate the wrongfulness

of his actions.  See U.S. Boasmond, 48 M.J. 912, 916 (N.M.C.C.A. 1998).  The crime was horrific and irrational, but that alone cannot be equated with mental incompetence.  See Medina, 59 F.3d at 1107.  Graves has not alleged or shown any prior history of mental illness or disorder (e.g., previous consultations or treatment with mental health professionals, previous hospitalizations).  The only "evidence" of Graves' incompetence at the time of the murder is his self-serving recollection, first disclosed nearly a decade later, of voices telling him to kill a demon, which turned out to be the victim.  The court finds from the record and all materials and exhibits filed, that Graves presented neither sufficient facts nor other evidence to the military courts to cast doubt upon his legal responsibility at the time of the offenses, or to establish a due process violation.  See Gilbert, 302 F.3d at 1180.  The court concludes that petitioner has failed to meet his burden to show that the military courts rendered a decision contrary to the facts or applicable law.

For all the foregoing reasons, the court finds that counsel should not be appointed in this case, and petitioner is not entitled to federal habeas corpus relief.

IT IS THEREFORE BY THE COURT ORDERED that petitioner's motion for appointment of counsel (Doc. 5) is denied.

IT IS FURTHER ORDERED that this action is dismissed and all relief denied.

DATED:  This 16th day of March, 2005, at Topeka, Kansas.


s/RICHARD D. ROGERS
United States District Judge